OPINION OF THE COURT
HEIMBURG, Senior Judge:
This case presents a novel question: when the Air Force inaccurately determined the appellant was dead, did that sever jurisdiction to try him for crimes he later committed? Our answer, in brief, is “no.”
Facts
Airman Basic, then Staff Sergeant, James D. Pou faked his death and deserted on 12 May 1987 while serving as an instructor in the Air Force’s pararescue training unit at Kirtland Air Force Base (AFB), New Mexico. The Air Force changed Pou’s status to “deceased” on 21 May 1987. He left behind a wife and two small sons, and went to San Diego, California, where he changed his name and (bigamously) married Monica, eventually fathering two more sons. In June 1992, Monica, having learned of the appellant’s past, contacted his family. The family reported him to the Air Force, which took him into custody on 10 June 1992. He pled guilty to desertion and bigamy in a general court-martial on 9 November 1992. His approved sentence was a bad-conduct discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to E-1.
Shortly before the appellant’s 1992 trial, Monica informed authorities that he had committed a bank robbery in Texas in 1988. Investigation began, and the appellant learned in spring 1993 that charges were imminent. On 1 June 1993, he escaped from confinement at March AFB, California, and remained at large until he turned himself in at Miramar Naval Air Station, California, on 16 June 1993.
In January 1994, the appellant was found guilty by a second general court-martial, sitting with members, of bank robbery ($40,-000), willfully making a false statement on a passport application in August 1987, escape from confinement, absence without leave, and wrongful appropriation of a battle dress uniform jacket he wore during the escape. Articles 122, 134, 95, 86, and 121, UCMJ, 10 U.S.C. §§ 922, 934, 895, 886, and 921 (1988). His approved sentence is a bad-conduct discharge, confinement for 6 years, forfeiture of all pay and allowances, and a fine of $42,000, with further confinement of up to 2 additional years if the fine is not paid.
Was Pou Separated?
The appellant argues lack of jurisdiction based on Article 3(b), UCMJ, 10 U.S.C. § 803(b) (1988).* Article 3(b) retains jurisdiction under the UCMJ over persons who were discharged from military service but are later charged with fraudulently obtaining their separation:
(b) Each person discharged from the armed forces who is later charged with having fraudulently obtained his discharge is, subject to section 843 of this title (article 43), subject to trial by court-martial on that charge and is after apprehension subject to this chapter while in the custody of the armed forces for that trial. Upon conviction of that charge he is subject to trial by court-martial for all offenses under this chapter committed before the fraudulent discharge.
The effect of the article is to provide an exception to the holding of the United States Supreme Court that only persons who are *778 “actually members” of the armed forces may be tried by court-martial. United States ex rel. Toth v. Quarles, 350 U.S. 11, 15, 76 S.Ct. 1, 4, 100 L.Ed. 8 (1955); United States v. Cole, 24 M.J. 18 (C.M.A.), cert, denied, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).
The appellant’s argument on jurisdiction starts with the premise that Article 3(b) does not confer jurisdiction over offenses alleged to have been committed after the former military member’s fraudulent discharge and before re-apprehension. He proceeds to argue that the Air Force personnel action which determined he had “died” after he faked his death was equivalent to a fraudulent discharge. He concludes that a court-martial had no jurisdiction to try him for the bank robbery and fraudulent passport application offenses, both of which occurred after his faked death and before he was apprehended by the Air Force in 1992.
We are aware of only two cases decided by the Court of Military Appeals (now Court of Appeals for the Armed Forces) applying Article 3(b). In neither case was the appellant charged with an offense which occurred between the fraudulent discharge and re-apprehension by the military. Cole, 24 M.J. at 19; Wickham v. Hall, 12 M.J. 145, 146 (C.M.A 1981). The appellant’s premise that the military has no jurisdiction over such offenses is, therefore, not established by any precedent. Nevertheless, we don’t need to ponder whether the military would have jurisdiction over such cases, for we don’t believe the appellant was separated at all.
In our view, the action of the Air Force in declaring a missing person “dead” is not the equivalent of a discharge of that person. A discharge is an affirmative action taken by a military service to separate a person. United States v. Howard, 20 M.J. 353, 354 (C.M.A.1985); United States v. Scott, 11 U.S.C.M.A 646, 29 C.M.R. 462 (1960). In the case of a fraudulent discharge, the military service takes an affirmative action to separate the individual, based on a misrepresentation by that person. Wickham v. Hall, 12 M.J. at 149. In the case of a faked death, on the other hand, the military takes no action to effect separation. Instead, it creates documents to officially recognize a fact which occurred outside of its control — the death of the military member. Of course, in this case, Airman Pou’s death was no fact at all, since Airman Pou was very much alive.
Since we conclude that Arman Pou’s faked death did not serve to “discharge” him from the Air Force, he has no basis to argue that the Air Force lacked jurisdiction to try him for offenses which occurred after that faked death. The Air Force properly subjected Airman Pou to court-martial jurisdiction as a “[m]ember of a regular component of the armed forces” under Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1) (1988).
Statute of Limitations
In a second assignment of error, the appellant argues, as he did at trial, that the statute of limitations bars his trial for falsifying the passport application in August 1987. Article 43(b)(1), UCMJ, 10 U.S.C. § 843(b)(1). The military judge ruled that the period of the appellant’s absence in desertion was to be excluded from the 5-year limitation under Article 43(c), and denied the appellant’s motion to dismiss.
The appellant’s argument is based on the view that Article 43(c) “tolls” the statute of limitations only for acts which occurred prior to the appellant’s absence in desertion. Article 43(c) says:
Periods in which the accused is absent without authority or fleeing from justice shall be excluded in computing the period of limitation prescribed in this section (article).
The appellant’s argument has some appeal, for that’s how Article 43(c) applies in most cases. Unfortunately for the appellant, his argument is contrary to the express language of the statute. “In construing unambiguous statutes, judicial inquiry begins and ends with the plain language of the statute.” United States v. Maxwell, 42 M.J. 568, 580 (A.F.Ct.Crim.App.1995). Cf. Pearson v. Bloss, 28 M.J. 376, 378 (C.M.A.1989) (rejecting an interpretation contrary to the express language of Article 2(a)(4) which gave jurisdiction over retired members). By its terms, Article 43(c) simply permits the period of the appellant’s desertion to be “excluded” from *779 the period of limitation. Excluding 12 May 1987 to 10 June 1992 leaves this offense well within the 5-year statute of limitations. The military judge correctly denied the appellant’s motion to dismiss.
Denial of Testimony
The appellant’s defense at trial was lack of mental responsibility. Under R.C.M. 916(k)(3), he had to prove by clear and convincing evidence that, at the time of the alleged offenses, he suffered from a severe mental disease or defect which caused him not to appreciate the nature and quality or the wrongfulness of his acts. Experts for the defense testified the appellant suffered from “dissociative personality” caused by physical and sexual abuse as a child. As a result, they testified, the appellant was not aware of what he was doing and acted without consideration of whether his acts were right or wrong.
In support of this defense, the appellant testified that his father physically and sexually abused him as a child. The prosecutor moved, in limine, to prevent him from calling his three sisters to corroborate his story of child abuse, arguing the testimony was irrelevant. The military judge listened to all three sisters in a session without the members under Article 39(a), UCMJ, 10 U.S.C. § 839(a) (1988). All of the sisters recalled their father as an alcoholic who appeared “angry” a lot and caused them to be afraid. Two recalled all four children being hit by their father, but none recalled any incident in which the appellant was singled out for physical abuse or was sexually abused. The judge granted the prosecutor’s motion, ruling that the testimony of the three sisters was not relevant.
The appellant asserts that the judge’s ruling was both wrong and extremely prejudicial to the defense case. The court members, he argues, were concerned with whether the child abuse had actually occurred. Since the testimony of the experts depended on the fact of abuse, when the judge denied him the sisters’ testimony he denied him the opportunity to prove his defense of lack of mental responsibility. We review a trial judge’s evidentiary rulings for abuse of discretion. United States v. Acton, 38 M. J. 330, 332-33 (C.M.A.1993), cert denied sub. nom. Leiker v. United States, — U.S.-, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994); United States v. Spata, 34 M.J. 284, 286 (C.M.A. 1992).
We agree with the appellant that his sisters’ testimony was relevant and admissible. In establishing his defense of lack of mental responsibility, the appellant was entitled to introduce evidence which showed the factual basis for his experts’ diagnosis.
On the other hand, we do not believe the sisters’ testimony supported a key issue. Experts for both sides agreed on the diagnosis, and accepted the appellant’s child abuse as the cause of his condition. The government experts simply disagreed with defense experts on the effect of the dissociative personality on the appellant’s behavior, testifying that the appellant understood fully the nature and qualify or wrongfulness of his acts.
Significantly, neither the prosecutor nor the defense counsel argued the truth or falsity of the appellant’s claimed child abuse in closing arguments. Their arguments about mental responsibility centered on whether the appellant’s behavior demonstrated, as defense experts testified, that he was not aware of what he was doing or that his acts were wrong. The sisters’ testimony was of marginal materiality to the issue of mental responsibility. Applying the four-part analysis of United States v. Weeks to the exclusion of this defense-proffered evidence, we find no prejudice to the appellant. United States v. Weeks, 20 M.J. 22, 25 (C.M.A.1985), aff'd, 22 M.J. 386 (C.M.A.1986). Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1988).
Conclusion
We conclude the findings and the sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are
AFFIRMED.
Senior Judge SCHREIER and Judge BECKER concur.

 We heard oral argument at the United States Air Force Academy, Colorado Springs, Colorado, on 12 September 1995.